**In re SCHWINN BICYCLE CO., et al., Debtors.**

**SCHWINN PLAN COMMITTEE, Plaintiff,**

v.

**TI REYNOLDS 531 LIMITED, Defendant.**

Bankruptcy Nos. 92 B 22474 to 92 B 22482.
Adv. No. 94 A 01618.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 17, 1995.

Howard Feller, Dion W. Hayes, McGuire Woods Battle & Booth, Mark K. Thomas and Terry Horwitz Kass, Katten Muchin & Zavis, Chicago IL, for plaintiff.

John K. Kneafsey, Daniel P. Dawson, Nisen & Elliott, Richmond VA, for defendant.

### MEMORANDUM OPINION ON MOTION OF TI REYNOLDS 531 LIMITED TO DISMISS FOR LACK OF PERSONAL JURISDICTION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to bankruptcy cases filed by Schwinn Bicycle Co. and various related entities (collectively "Debtor" or "Schwinn") under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Its liquidating Plan was confirmed. On October 3, 1994, as permitted by the confirmed Plan, Plaintiff Schwinn Plan Committee ("Plaintiff" or "Committee") filed the instant Adversary Complaint against a number of defendants, including Defendant TI Reynolds 531 Limited ("Defendant" or "Reynolds"), an English corporation and former Schwinn trade supplier. The Committee alleges as to this Defendant that Schwinn transferred $59,246.93 to Reynolds, within 90 days prior to its filing in bankruptcy, in order to satisfy two invoices for metal tubing Schwinn used

in manufacturing bicycle frames. The Committee asserts that the transfer was preferential, and thus recoverable, under 11 U.S.C. §§ 547 and 550.

Reynolds has moved to dismiss the Committee's Adversary Complaint under Fed. R.Civ.P. 12(b)(2) for want of personal jurisdiction. For reasons stated herein, Reynolds' Motion to Dismiss is by separate order denied.

## BACKGROUND

Schwinn Bicycle Co. was a United States corporation engaged in the business of manufacturing bicycles and bicycle components. Prior to its bankruptcy, Schwinn purchased metal tubing for use in constructing its bicycle frames from Defendant TI Reynolds 531 Limited. Reynolds is a foreign corporation, organized under the laws of England and principally conducting business in Birmingham, England. Reynolds does not maintain an office within the United States.

On October 7, 1992, Schwinn and several related entities (collectively "Debtor" or "Schwinn") filed petitions for relief under Chapter 11 of the Bankruptcy Code. Reynolds subsequently filed a proof of claim (Claim No. 623) in Schwinn's bankruptcy proceeding on January 6, 1993, for 20,135.68 Pounds Sterling. Reynolds seeks allowance of its claim as a general unsecured claim, arising out of two unpaid invoices for frame tubing, attached as exhibits to the Proof of Claim and dated July 20, 1992 and August 21, 1992. The goods subject to those invoices were allegedly dispatched in July and August 1992, respectively.

An order was entered on June 6, 1994, confirming Schwinn's Plan of Reorganization. The Schwinn Plan Committee was established pursuant to Article IX of the Plan to perform various tasks necessary for plan implementation. Pursuant to § 9.2 of the Plan and ¶ 34 of the Confirmation Order, the Committee was authorized to prosecute any proceedings which could be brought on behalf of the Debtor or the Debtor's estate and to recover any transfers to which the Debtor might be entitled under the Bankruptcy Code.

On October 3, 1994, the Committee filed the instant Adversary Complaint against 49 pre-petition creditors, including Reynolds, seeking to avoid and recover various alleged preferential transfers under 11 U.S.C. §§ 547(b) and 550. Of the named defendants, Reynolds and 15 other creditors were entities organized solely under foreign law that maintained foreign principal places of business. The Committee alleges with respect to this Defendant that Schwinn delivered a $59,246.93 check to Reynolds, within 90 days prior to filing its bankruptcy, in satisfaction of two unpaid invoices for bicycle frame tubing. The invoices at issue in the Committee's preference action were dated May 18 and June 11, 1992. Goods subject to those invoices were dispatched in May and June 1992, respectively, months prior to delivery of the goods described in Reynolds' Proof of Claim.

Reynolds filed the instant Motion to Dismiss under Fed.R.Civ.P. 12(b) on October 31, 1994. Reynolds originally moved to dismiss for lack of subject matter jurisdiction, personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. See Fed.R.Civ.P. 12(b)(1)–(5). However, the parties have since agreed to dismiss four of the five alleged grounds, and Reynolds now stands only on its Motion to Dismiss for lack of personal jurisdiction.

## DISCUSSION

For this Court to exercise authority over this proceeding, jurisdiction must properly lie over both the subject matter of the suit and the parties to the suit. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 700, 102 S.Ct. 2099, 2103, 72 L.Ed.2d 492 (1982); *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 137–38, 83 L.Ed. 104 (1938); *Thompson v. Whitman*, 85 U.S. (18 Wall.) 457, 465, 21 L.Ed. 897 (1874). Subject matter jurisdiction lies under 28 U.S.C. § 1334(b). This matter further constitutes a core proceeding under 28 U.S.C. § 157(B)(2)(B), (C), (F), and (O), and has been properly referred here under 28 U.S.C. § 157(a) and Local General Rule 2.33(A) of the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. Thus, the

only issue that need be addressed is whether this Court has personal jurisdiction to enter a decision on the dispute between these parties.

■ Personal jurisdiction may be established either by proper service of process, *see Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987), or by the defendant's waiver of any defect in service, *see Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). The burden of establishing personal jurisdiction is always on the party asserting it. *Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1122–23 (7th Cir.1983), *cert. denied sub nom. Bunnan Tong & Co. v. F.W. Woolworth Co.,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). At this stage in the proceedings, based on written submissions alone, the asserting party need only make a prima facie showing that jurisdiction exists. *Id.* at 1122. All of that party's allegations of jurisdiction facts are presumed true unless contested and found to be in error. *Id.; O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1175 (7th Cir.1971).

### *Personal Jurisdiction through Proper Service of Process*

■ Service over a nonresident defendant will be "proper," and thus legally valid, so long as a federal or state statute establishing amenability to service is complied with and the exercise of jurisdiction further accords with due process protections afforded by the Fifth and Fourteenth Amendments. *See Omni Capital Int'l,* 484 U.S. at 104, 108 S.Ct. at 409 (federal courts look to Fifth Amendment due process standards when federal statute governs service of process); *see also* Fed.R.Civ.P. 4(k)(2) (eff. December 1, 1993).[1]

Service of process as shown on return of the original Summons has not been disputed here, may no longer be challenged pursuant to the Federal Rules, *see* Fed.R.Civ.P. 12(g), (h) (per Fed.R.Bankr.P. 7012(b)), and is therefore presumptively valid. Thus, in the absence of consent or waiver by the Defendant to personal jurisdiction, this Court would need only assure itself that the assertion of personal jurisdiction over Reynolds is consistent with due process.

■ Absent consent, federal courts may exercise jurisdiction over a defendant to resolve a federal question only where the defendant has attained sufficient, aggregate "minimum contacts" with the United States so as to satisfy the Due Process Clause of the Fifth Amendment. *See United Rope Distribs., Inc. v. Seatriumph Marine Corp.,* 930 F.2d 532, 534–35 (7th Cir.1991) (Judge Easterbrook stating, *in dicta,* that Seventh Circuit favors minority approach of looking to minimum contacts with United States, not forum state, when reviewing personal jurisdiction in federal question cases); *Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1244 (7th Cir.1990); *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671–72 (7th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *see also Stafford v. Briggs,* 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) (Justice Stewart, in dissenting opinion joined by Justice Brennan, reaching "national contacts" question and holding that due process "requires only certain minimum contacts between the defendant and the sovereign that has created the court."); *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290 (3rd Cir.), *cert.*

1. Technically, Fed.R.Civ.P. 4(k)(2) has yet to be designated expressly applicable to adversary proceedings in bankruptcy cases. *See* Fed. R.Bankr.P. 7004(g). However, the rule merely restates well-settled standards from federal case-law and this Court finds no reason not to apply those standards herein. The Bankruptcy Rules Committee has since seen fit to correct this perceived oversight. Proposed Fed.R.Bankr.P. 7004(f), scheduled to take effect on December 1, 1996 (pending approval) will read:

 (f) PERSONAL JURISDICTION. If the exercise of jurisdiction is consistent with the Con-

stitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.
Fed.R.Bankr.P. 7004(f) (proposed) (Collier Supp.).

denied, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985); *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1269 (6th Cir.1984); *Harley–Davidson, Inc. v. Columbia Tristar Home Video, Inc.*, 851 F.Supp. 1265, 1269 (E.D.Wis.1994); *Hayeland v. Jaques*, 847 F.Supp. 630, 631 (E.D.Wis.1994); *Brunswick Corp. v. Suzuki Motor Co., Ltd.*, 575 F.Supp. 1412, 1416 n. 2 (E.D.Wis.1983); *Ace Pecan Co. v. Granadex Int'l Ltd. (In re Ace Pecan Co.)*, 143 B.R. 696, 699–701 (Bankr.N.D.Ill.1992) (Sonderby, J.).

### Consent to Personal Jurisdiction

In the alternative, even where personal jurisdiction cannot otherwise be established, a defendant may nonetheless manifest consent to a court's in personam jurisdiction where he or she takes steps or seeks such relief as is consistent only with the hypothesis that the court has jurisdiction over his or her person. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–05, 102 S.Ct. 2099, 2104–06, 72 L.Ed.2d 492 (1982) ("The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.* at 705, 102 S.Ct. at 2105). Unlike subject matter jurisdiction, which restricts judicial power as a matter of sovereignty and thus cannot be waived, personal jurisdiction protects a defendant's individual liberty interests. *Id.* at 704, 102 S.Ct. at 2105. Because the defense is a personal right, it may be obviated by consent, either express or implied, or otherwise waived. *Id.* at 703–05, 102 S.Ct. at 2105–06; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *Heller Fin'l, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290 (7th Cir.1989). Where a party consents to a court's jurisdiction over its person, conventional minimum contacts analysis will be irrelevant. *General Contracting & Trading v. Interpole, Inc.*, 940 F.2d 20, 22 (1st Cir.1991) (and cases cited); *see Insurance Co. of Ireland*, 456 U.S. at 704, 102 S.Ct. at 2105.

### Personal Jurisdiction over Reynolds

Reynolds argues that this Court lacks personal jurisdiction to compel Reynolds to appear and defend itself in this Adversary proceeding. Specifically, Reynolds asserts that any attempt to exercise such authority would violate constitutional due process guarantees for lack of minimum contacts. In response, rather than address the merits of Reynolds' due process arguments, the Committee asserts that by filing a proof of claim in the above-captioned bankruptcy case, Reynolds consented to this Court's exercise of personal jurisdiction for purposes of resolving any matters related to its claim against the estate—including the instant preference action. Reynolds replies that the act of filing a proof of claim constitutes a consent to personal jurisdiction only for matters which arise out of the same transaction or occurrence as the proof of claim. It further argues, without offering supporting evidence, that the transaction from which the Committee's preference claim arose is not the same as that which gave rise to Reynolds' Proof of Claim. The Committee responds, lastly, that Reynolds' claim and its preference action arose from the same transaction or occurrence under the liberal Seventh Circuit interpretation of this standard. For reasons discussed herein, this Court finds that by filing its Proof of Claim, Reynolds consented to the exercise of personal jurisdiction in the instant Adversary. Accordingly, Reynolds' Motion to Dismiss is by separate order denied.

This Court finds persuasive the reasoning of the Court in *Kline v. Zueblin, AG (In re American Export Group Int'l Servs., Inc.)*, 167 B.R. 311, 313 (Bankr.D.Col.1994), and adopts that reasoning here. The Proof of Claim filed by Reynolds in the related bankruptcy case here is tantamount to a complaint filed in federal court. *Id.* (and cases cited). The Committee represents the estate for limited purposes of pursuing recoverable transfers in its narrowly-defined role. As such, its preference action is properly viewed as a counterclaim to the proof of claim filed by Reynolds against the estate. *See Id.;* Fed.R.Civ.P. 13 (per Fed.R.Bankr.P. 7013); *see also* 28 U.S.C. § 157(b)(2)(C) (referring to actions brought by the estate against persons filing proofs of claim as "counterclaims").

 A party filing a complaint will necessarily be viewed as having submitted to personal jurisdiction in that forum for all possible grounds of counterclaim. *Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S.Ct. 454, 458–59, 82 L.Ed. 649 (1938); *American Export Group*, 167 B.R. at 313 (and cases cited). The Supreme Court has long recognized the asymmetry that would result if a plaintiff could raise jurisdictional objections to counterclaims filed by a defendant:

> [t]he plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff.

*Adam v. Saenger*, 303 U.S. at 67–68, 58 S.Ct. at 458. Similarly, by filing a proof of claim in a pending bankruptcy case, a creditor consents to personal jurisdiction in all possible counterclaims brought by the estate. *American Export Group*, 167 B.R. at 314 (and cases cited).

 Reynolds argues, and for reasons unknown the Committee concedes, that the act of filing a proof of claim should only be construed as consent to personal jurisdiction over compulsory, not permissive, counterclaims. However, neither the Federal Rules of Civil Procedure nor applicable case law permits this disparity in treatment. A plaintiff may not object that the court lacks personal jurisdiction for purposes of adjudicating any counterclaim, compulsory or permissive, lodged against it by the defendant. *See* 6 Charles. A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 1416, 1424 (1990).

 Fed.R.Civ.P. 13, as applicable here with only minor changes per Fed. R.Bankr.P. 7013, controls the exercise of judicial power over counterclaims in bankruptcy adversary proceedings. Compulsory counterclaims are those claims that exist at the time of pleading, arise out of the same transaction or occurrence as the opposing party's claim, and do not require for adjudication parties over whom jurisdiction cannot

be acquired. Fed.R.Civ.P. 13(a); *Burlington Northern R.R. Co. v. Strong*, 907 F.2d 707, 710–11 (7th Cir.1990). Permissive counterclaims are those remaining claims against an opposing party deemed non-compulsory. Fed.R.Civ.P. 13(b).

 This distinction is only relevant upon resolution and judgment of the opposing party's claim. With limited exceptions, compulsory counterclaims must be filed by a defendant during pendency of the first suit between the parties in order to preserve the defendant's rights. *Pullman Constr. Indus., Inc. v. United States (In re Pullman Constr. Indus., Inc.)*, 142 B.R. 280, 282–83 (Bankr. N.D.Ill.1992) (Schmetterer, J.). Permissive counterclaims, by way of contrast, may be brought as independent actions well after resolution of the first claim, so long as other applicable statutes (e.g. statutes of limitations) are complied with.

Under Fed.R.Civ.P. 13, any claim a defendant has may be asserted against the plaintiff as a counterclaim in the pending suit. Alternatively, a defendant that does not want to assert its claim as a counterclaim may bring the claim as plaintiff in an independent proceeding, during pendency of the first action. Here, Reynolds' unsecured claim has not yet been reduced to judgment. Thus, for our purposes, it matters not whether the Committee's counterclaim is compulsory or permissive.

By filing a proof of claim in Schwinn's bankruptcy case, Reynolds sought to avail itself of the benefits of federal bankruptcy law as pertains to unsatisfied creditors. Ruling that Reynolds did not submit to this Court's jurisdiction to rule upon related preference actions when it filed its Proof of Claim would permit an unjust asymmetry, as Reynolds would have the full benefit of the power of this Court as claimant while retaining immunity from its authority over claims against it as defendant. *See Burnham v. Superior Court*, 495 U.S. 604, 638, 110 S.Ct. 2105, 2125, 109 L.Ed.2d 631 (1990) (Brennan, J., concurring) (noting these same concerns with transient jurisdiction).

 Establishing jurisdiction over a party already voluntarily before a court is mark-

**532**

edly different from doing so over a party not before it because he or she must first be hailed into court. *See Leman v. Krentler–Arnold Hinge Last Co.,* 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932). The choice to file a claim in Schwinn's bankruptcy case, or to abstain, was Reynolds' to make. There are various readily-identifiable risks a creditor assumes by filing a proof of claim. For example, by filing a proof of claim, a creditor submits to counterclaims being resolved by the bankruptcy court as core proceedings rather than having such claims be treated as noncore proceedings that can only be finally resolved by the district court. *See* 28 U.S.C. § 157(b)(2)(C). Asserting authority over the pending Adversary seems a small price to exact for allowing Reynolds to purposefully avail itself of the benefits of federal bankruptcy law as an allowed claimant.

As the Supreme Court has noted, "[h]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure." *Gardner v. New Jersey,* 329 U.S. 565, 573, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947). Once Reynolds entered the jurisdiction of this Court for purposes of bringing its proof of claim, it also entered this Court's realm of authority to resolve any claims necessary to determine the extent of allowance of its secured claim. *See* 11 U.S.C. § 502(d). Thus, this Court finds it is within its well-established authority to exercise judicial power over this defendant.

### CONCLUSION

For reasons stated herein, this Court finds it has authority to exercise personal jurisdiction over Reynolds with respect to the Complaint filed in this Adversary Proceeding. Accordingly, Reynolds' Motion to Dismiss is by separate order denied.