Vitaform, Inc. v. Aeroflow, Inc., 2021 NCBC 58.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

VITAFORM, INC. d/b/a BODY
AFTER BABY,

Plaintiff,

v.

AEROFLOW, INC. and MOTIF
MEDICAL, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3707

**ORDER AND OPINION
ON DEFENDANTS'
MOTION FOR LEAVE
TO AMEND ANSWER
TO FIRST AMENDED
COMPLAINT**

1.     **THIS MATTER** is before the Court upon Defendants Aeroflow, Inc. and Motif Medical, LLC's ("Defendants") Motion for Leave to Amend Answer to Plaintiff's First Amended Complaint filed 21 July 2021 (the "Motion").  (ECF No. 82.)

2.     Having considered the Motion, the briefs in support of and in opposition to the Motion, the appropriate evidence of record, and the arguments of counsel at the hearing on the Motion, the Court hereby **GRANTS** the Motion as set forth below.

*Smith DeVoss, PLLC, by Jeffrey J. Smith and John R. DeVoss, and Wimer & Snider, P.C., by Jake A. Snider, for Plaintiff Vitaform, Inc. (d/b/a Body After Baby).*

*Ward and Smith, P.A., by Joseph A. Schouten and Haley R. Wells, for Defendants Aeroflow, Inc. and Motif Medical, LLC.*

Bledsoe, Chief Judge.

I.

FACTUAL & PROCEDURAL BACKGROUND

3.     This case involves allegations that a national distributor of breast pumps and maternity compression garments, Defendant Aeroflow, Inc. ("Aeroflow"), stole

the products, product designs, and business plan of its manufacturer, Plaintiff Vitaform, Inc. (d/b/a Body After Baby) ("Plaintiff" or "BAB"), enabling Aeroflow to copy, manufacture, and/or sell its own products through its wholly owned subsidiary, Defendant Motif Medical, LLC, in direct competition with BAB. BAB contends that its maternity compression garment business has suffered substantial injury as a result of Defendants' alleged misconduct, including the loss of its strategic position as first to market with certain highly profitable products.

4.     Defendants seek leave to amend their answer under Rule 15 of the North Carolina Rules of Civil Procedure (the "Rule(s)") to include three counterclaims—defamation *per se*, tortious interference with prospective economic advantage, and unfair and deceptive trade practices—and to add an affirmative defense asserting that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is barred by the statute of frauds under N.C.G.S. § 25-2-201. (Mem. of Law in Supp. of Mot. to Amend Answer to First Am. Compl. [hereinafter "Mem. of Law in Supp."], ECF No. 83.) Defendants contend that their newly asserted counterclaims are based on information disclosed by BAB's President, Don Francisco ("Francisco"), at his deposition on 12 May 2021, which Defendants argue they confirmed in subsequent third-party interviews.

5.     BAB opposes the Motion, contending both that this Court lacks personal jurisdiction over Plaintiff to adjudicate Defendants' counterclaims and that amendment under Rule 15 is improper on grounds of undue delay, futility, bad faith,

and unfair prejudice. (Pl.'s Resp. Br. to Defs.' Mot. to Amend [hereinafter "Pl.'s Resp. Br.], ECF No. 89.)

6. The Court convened a hearing on the Motion on 10 September 2021 (the "Hearing"), at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

ANALYSIS

A. Personal Jurisdiction

7. To begin, the Court turns to Plaintiff's challenge to the Motion on personal jurisdiction grounds. Our Supreme Court has instructed that "[i]n examining whether a nonresident defendant is subject to personal jurisdiction in our courts," trial courts should engage in a "two-step analysis": "First, jurisdiction over the defendant must be authorized by N.C.G.S. § 1-75.4—North Carolina's long-arm statute. Second, if the long-arm statute permits consideration of the action, exercise of jurisdiction must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Beem USA LLLP v. Grax Consulting, LLC*, 373 N.C. 297, 302 (2020) (cleaned up). "[B]ecause North Carolina's long-arm statute has been interpreted to allow the exercise of personal jurisdiction to the fullest extent allowed under the due process clause, the two-step analysis collapses into one inquiry[,]" *Worley v. Moore*, 2017 NCBC LEXIS 15, at \*19 (N.C. Super. Ct. Feb. 28, 2017), namely, "whether [the] defendant has the minimum contacts with North Carolina

necessary to meet the requirements of due process[,]"*Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27 (1999)).

8. For a court to exercise personal jurisdiction, "there must be sufficient minimum contacts between the nonresident defendant and our state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Skinner v. Preferred Credit*, 361 N.C. 114, 122 (2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). As our Supreme Court explained in *Beem*:

> Personal jurisdiction cannot exist based upon a defendant's "random, fortuitous, or attenuated" contacts with the forum state, *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)]), but rather must be the result of "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Skinner*, 361 N.C. at 133 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As such, a defendant's contacts with the forum state must be such that a defendant "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Skinner*, 361 N.C. at 133 ("A crucial factor is whether the defendant had reason to expect that he might be subjected to litigation in the forum state.").

397 N.C. at 303.

9. The Court further summarized:

> The United States Supreme Court has recognized two types of personal jurisdiction that can exist with regard to a foreign defendant: general (or "all-purpose") jurisdiction and specific (or "case-based") jurisdiction. General jurisdiction is applicable in cases where the defendant's affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. Specific jurisdiction, conversely, encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum.

*Id.* (cleaned up). *See generally Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024–32 (2021).

10. Here, Plaintiff, a California corporation, challenges this Court's exercise of specific jurisdiction over it in North Carolina, contending that it did not do business with Defendants or otherwise have minimum contacts with the State of North Carolina at the time of the events giving rise to Defendants' counterclaims. (Pl.'s Resp. Br. 3.) In particular, Plaintiff contends that the communications on which the counterclaims are based did not occur in North Carolina. (Pl.'s Resp. Br. 4.)

11. Plaintiff did, however, file this action in North Carolina, and the parties dispute whether that act, standing alone, is sufficient to subject Plaintiff to the jurisdiction of this Court to answer Defendants' proposed counterclaims. Plaintiff argues that it is not and relies solely on a law review article[1] and a Florida state court decision[2] for its support. Defendants, in contrast, argue that Plaintiff's initiation of this action in North Carolina is sufficient to subject it to this Court's jurisdiction and rely on numerous federal decisions for their support. (Reply Br. in Supp. of Mot. to Amend Answer to First Am. Compl. 2–3, ECF No. 91.)[3]

---

[1] *See* Jon D. Bressler, *Impermissive Counterclaims: Why NonResident Plaintiffs Can Contest Personal Jurisdiction in Unrelated Countersuits*, 65 American U. L. Rev. 641, 671 (2016).

[2] *See Edwards v. Johnson*, 569 So.2d 473, 474 (Fla. Dist. Ct. App. 1990).

[3] Defendants do not contend that Plaintiff is subject to this Court's general jurisdiction and instead acknowledged at the Hearing that Plaintiff's initiation of this action is the sole basis on which they rest their contention that Plaintiff is subject to personal jurisdiction in this Court to answer the proposed counterclaims.

12.     While the North Carolina courts do not appear to have addressed the issue before the Court, the federal decisions on which Defendants rely and other similar federal decisions are well-reasoned and persuasive, and thus will supply the rule of decision for the Court here.[4]  These cases find their source in the United States Supreme Court's decisions in *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932) and *Adam v. Saenger*, 303 U.S. 59 (1938).  In *Leman*, a patent case, the Court held that "[w]hen the [plaintiff] brought the suit in [federal district court], it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." *Leman*, 284 U.S. at 451.  Similarly, in *Adam*, the Court concluded that a plaintiff becomes subject to the trial court's jurisdiction for purposes of a defendant's counterclaims by virtue of having initiated the action in the forum.  The Court held in *Adam*:

> The plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence.  It is the price which the state may exact as the condition of opening its courts to the plaintiff.

*Adam*, 303 U.S. at 67.

13.     Federal courts since *Adam* have dutifully followed these holdings, sometimes couching their decisions in terms of waiver, *see, e.g.*, *Grupke v. Linda Lori Sportswear*, 174 F.R.D. 15, 18–19 (E.D.N.Y. 1997) ("In the vast majority of cases a plaintiff, by virtue of bringing suit, waives venue and personal jurisdiction objections

---

[4] The Court may consult federal authority for guidance in resolving the Motion.  *See, e.g.*, *Sutton v. Duke*, 277 N.C. 94, 101 (1970); *Turner v. Duke Univ.*, 325 N.C. 152, 164 (1989).

to a defendant's counterclaims."), and sometimes as consent, *see, e.g.*, *In re Schwinn Bicycle Co.*, 182 B.R. 526, 531 (Bankr. N.D. Ill. 1995) ("[B]y filing a proof of claim in a pending bankruptcy case, a creditor consents to personal jurisdiction in all possible counterclaims brought by the estate."). Regardless, these courts conclude that when a plaintiff files its lawsuit in the forum, it "purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson*, 357 U.S. at 253 (citing *Int'l Shoe*, 326 U.S. at 319), subjecting it to the forum court's jurisdiction. *See, e.g.*, *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) ("By filing suit in Wisconsin, Trade Well availed itself of the forum, whether by explicitly consenting to jurisdiction, waiving any challenge to jurisdiction, or simply receiving the privileges and benefits of the forum state."); *Gen. Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991) ("Whatever label one might place on Trastco's conduct, it seems pellucidly clear that, by bringing Suit No. 2, Trastco submitted itself to the district court's jurisdiction in Suit No. 1. Trastco elected to avail itself of the benefits of the New Hampshire courts *as a plaintiff*, starting a suit against Interpole."); *Saudi Basic Indus. Corp. v. Exxonmobil Corp.*, 194 F. Supp. 2d 378, 410 (D.N.J. 2002) ("SABIC also purposefully availed itself of the protection of the U.S. laws by filing the NJ-I and Delaware actions.").

14. Significantly, federal courts have exercised jurisdiction over plaintiffs to adjudicate both compulsory and permissive counterclaims. *See, e.g.*, *Trade Well Int'l*, 825 F.3d at 859 ("In general, when a defendant interposes a permissive counterclaim, the plaintiff cannot object that the court lacks personal jurisdiction for purposes of

adjudicating the claim."); *Gen. Contracting & Trading Co., LLC*, 940 F.2d at 23 ("[W]e think it is inevitable that [by filing suit] Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts . . . . [T]he Supreme Court has long recognized the inequity that would result if a plaintiff could raise jurisdictional objections to counterclaims filed by a defendant."); *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir. 1974) (noting that when a plaintiff institutes an action, he "submit[s] himself to the court's jurisdiction not only as to his own cause of action but also as to any counterclaim filed against him"); *In re Schwinn Bicycle Co.*, 182 B.R. at 531 ("A plaintiff may not object that the court lacks personal jurisdiction for purposes of adjudicating any counterclaim, compulsory or permissive, lodged against it by the defendant."); *see generally* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1424, at nn.1 & 6–7 (3d ed. Apr. 2021 update) (collecting cases) ("[I]f defendant interposes a permissive counterclaim, plaintiff cannot object that the court lacks personal jurisdiction or that venue is improper for purposes of adjudicating the claim.").

15.     Reliance on these federal decisions is particularly appropriate here because Defendants' proposed counterclaims are related and closely connected to Plaintiff's affirmative claims in this action. Unlike the unrelated counterclaims at issue in the Florida decision on which Plaintiff relies, *see Edwards*, 569 So.2d at 574, Plaintiff's opposition brief makes plain—despite Plaintiff's protestations to the contrary—that its defense to the counterclaims is grounded entirely in establishing Defendants'

liability on Plaintiff's affirmative claims, inextricably tying the claims and proposed counterclaims together, (Pl.'s Resp. Br. 12–13).

16. Based on the above, the Court concludes that it has personal jurisdiction over Plaintiff to adjudicate Defendants' proposed counterclaims in this action. Plaintiff's arguments to the contrary are without merit.

B. Rule 15

17. Having found that the Court has jurisdiction over Plaintiff, the Court next considers the application of Rule 15. Rule 15(a) provides, in relevant part, as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

N.C. R. Civ. P. 15(a).

18. Although Rule 15 makes plain that "leave shall be freely given," "the rules still provide some protection for parties who may be prejudiced by liberal amendment," *Henry v. Deen*, 310 N.C. 75, 82 (1984), and amendment may be denied for reasons of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility of amendment," *Bartlett Milling Co. v. Walnut Grove Auction and Realty Co.*, 192 N.C. App. 74, 89 (2008). Nevertheless, our Supreme Court has made clear that "amendments should be freely allowed unless some material prejudice to the other party is demonstrated." *Mauney v. Morris*, 316

N.C. 67, 72 (1986). "The burden is upon the opposing party to establish that that party would be prejudiced by the amendment." *Id.*

19. "[A] motion to amend is addressed to the discretion of the court, and its decision thereon is not subject to review except in case of manifest abuse." *Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 603 (2018) (quotations omitted).

### i. Undue Delay

20. Plaintiff argues that Defendants' two-month delay between Francisco's deposition and the filing of the Motion constitutes undue delay. (Pl.'s Resp. Br. 7.) Plaintiff also argues that Defendants have violated the Court's Case Management Order ("CMO") by seeking amendment after the 4 January 2021 deadline for amendments to pleadings in the CMO. (Case Management Order, ECF No. 64.) The Court finds Plaintiff's arguments to be without merit.

21. To start, Defendants' counterclaims are based entirely on information Francisco disclosed for the first time in this litigation at his deposition on 12 May 2021. Rather than immediately seek leave to amend, Defendants quite reasonably investigated Francisco's disclosures through third-party interviews over the following two months. Defendants offer evidence that those interviews appear to have confirmed the basis for the newly asserted counterclaims. Defendants' resulting motion in mid-July was filed following the completion of this brief but necessary and seemingly fruitful investigation. The Court cannot find undue delay on these facts. Indeed, North Carolina courts typically find undue delay in situations involving far more alleged delay than is present here. *See, e.g.*, *Wilkerson v. Duke Univ.*, 229 N.C.

App. 670, 679 (2013) (thirteen months); *Carmayer, LLC v. Koury Aviation, Inc.*, 2017 NCBC LEXIS 82, at \*21 (N.C. Super. Ct. Sept. 11, 2017) (seventeen months); *see also Alkemal Sing. PTE Ltd. v. DEW Global Fin., LLC*, 2017 NCBC LEXIS 112, at \*31 (N.C. Super. Ct. Dec. 12, 2017) (collecting cases to similar effect). Plaintiff's objection based on undue delay is therefore without merit.

22. As for Defendants' purported failure to comply with the CMO, it is undisputed that the information giving rise to Defendants' counterclaims was disclosed by Francisco five months after the deadline for amendment. In such circumstances, the Court will not permit the CMO to preclude Defendants from timely asserting claims based on previously unknown facts that Defendants could not have discovered earlier with reasonable diligence. *See, e.g.*, *Belcher v. W.C. English*, 125 F. Supp. 3d 544, 549 (M.D.N.C. 2015) ("Good cause may be shown if the plaintiff uncovered previously unknown facts during discovery that would support an additional cause of action, or if despite the exercise of reasonable diligence, the evidence supporting the proposed amendment would not have been discovered until after the amendment deadline had passed.") (cleaned up).[5]

ii. Futility

23. Plaintiff next objects on grounds of futility, contending that the proposed counterclaims fail to state a claim under Rule 12(b)(6). (Pl.'s Resp. Br. 11.) The Court

---

[5] Plaintiff also objects on grounds of undue delay to Defendants' motion to add an affirmative defense based on the statute of frauds. (Pl.'s Resp. Br. 9.) As discussed later in the opinion, however, because the Court concludes that permitting the assertion of this defense will not unfairly prejudice Plaintiff, the Court further concludes that any delay in moving to amend to add the defense is not a sufficient basis to deny amendment under Rule 15.

again finds Plaintiff's argument wholly without merit. Plaintiff's argument on this score is essentially an assertion that BAB will prevail on the contested issues raised by the counterclaims and ignores entirely the standard for dismissal under Rule 12(b)(6). (Pl.'s Resp. Br. 11–13.) Plaintiff nowhere grapples with the sufficiency of the specific allegations Defendants have advanced to support their claims.

24. As this Court has previously held, "[t]he futility standard under Rule 15 is essentially the same standard used in reviewing a motion to dismiss under Rule 12(b)(6)[.]" *Simply the Best Movers, LLC v. Marrins' Moving Sys.*, 2016 NCBC LEXIS 28, *5–6 (N.C. Super. Ct. 2016). When considering a motion to dismiss under Rule 12(b)(6), the Court views the allegations in the pleading at issue "in the light most favorable to the non-moving party[,]" *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (quoting *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 852 (2016)), and determines "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[,]" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51 (2016)).

25. "[T]he [pleading] is to be liberally construed, and the trial court should not dismiss the [pleading] unless it appears beyond doubt that [the] [pleader] could prove no set of facts in support of his claim which would entitle him to relief." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 444 (2008) (quoting *Meyer v. Walls*, 347 N.C. 97, 111–12 (1997)). Dismissal of a [pleading] under Rule 12(b)(6) is proper only: "(1) when the [pleading] on its face reveals that no law supports [the]

claim; (2) when the [pleading] reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the [pleading] necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278 (1985).

26.     The Court has carefully reviewed Defendants' proposed counterclaims under the foregoing rules and concludes that each counterclaim is plainly and succinctly stated with supporting allegations of fact tied to the elements of each claim. As such, Plaintiff's contention that Defendants' motion should be denied on futility grounds must be rejected.

### iii. Bad Faith

27.     Next, Plaintiff contends that Defendants have brought the Motion in bad faith. (Pl.'s Resp. Br. 9.)  Again, the Court disagrees.  Defendants' allegations stem from Francisco's deposition admissions and a sworn affidavit from a third party. (Mem. of Law in Supp. 2.)  Although Plaintiff vigorously contends that its view of the disputed facts will prevail and that Defendants' allegations are meritless, courts have recognized that "conjecture about the merits of litigation should not enter into the decision whether to allow amendment." *Falls v. Goldman Sachs Trust Co., N.A.*, No. 5:16-CV-7409-FL, 2017 U.S. Dist. LEXIS 207007, *35 (E.D.N.C. 2017) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).  More specifically, Plaintiff has failed to offer any evidence that Defendants' Motion is driven by an improper motive or purpose, is abusive, or is otherwise offered in bad faith.  Plaintiff's bad faith challenge is therefore meritless.  *See, e.g.*, *Bundy v. Com. Credit Co.*, 202 N.C. 604, 607 (1932) (noting that "bad faith . . . implies a false motive or a false purpose and

hence . . . is a species of fraudulent conduct"); *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (holding that "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend"); *GSS Props., Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988) ("Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage.").

iv. <u>Unfair Prejudice</u>

28.    Finally, Plaintiff argues that permitting the assertion of new counterclaims at or after the end of the fact discovery period on 5 August 2021, as Defendants seek to do here, will be unfairly prejudicial.  (Pl.'s Resp. Br. 10.)   The period for all discovery, however, does not expire until 15 November 2021, and the Court will permit additional fact discovery limited to Defendants' counterclaims and additional affirmative defense to alleviate any potential prejudice caused by the timing of Defendants' amendment.   Indeed, our courts have recognized that "the fact that additional discovery may be required [does not] amount to prejudice or make the delay 'undue'" under Rule 15.  *See N. River Ins. Co. v. Young*, 117 N.C. App. 663, 671 (1995) (citing *Coffey v. Coffey*, 94 N.C. App. 717, 723 (1989)).  Thus, this objection, too, is without merit.

III.

CONCLUSION

29.    **WHEREFORE**, for the reasons set forth above, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

a. Defendants' Motion for Leave to Amend Answer to Plaintiff's First Amended Complaint is hereby **GRANTED**. Defendants shall file their Amended Answer to First Amended Complaint substantially in the form as attached as Exhibit A to Defendants' Motion within three (3) business days after the entry of this Order; and

b. Counsel for Plaintiff and Defendants shall meet, confer, and file a recommended discovery and case management schedule to implement the Court's ruling no later than ten (10) days after the entry of this Order.

**SO ORDERED**, this the 16th day of September, 2021.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge